UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
Urbana Division

| | |
|---|---|
| PATRICK J. HYDE, ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | |
| ) | |
| MICHAEL J. ASTRUE, ) | Case No. 06-2019 |
| COMMISSIONER OF SOCIAL ) | |
| SECURITY,[1] ) | |
| ) | |
| Defendant. ) | |

# REPORT AND RECOMMENDATION

In September 2005, Administrative Law Judge Barbara Welsch (hereinafter "ALJ") denied Plaintiff Patrick Hyde's applications for both Supplemental Security Income (hereinafter "SSI") and Disability Insurance Benefits (hereinafter "DIB"). The ALJ based her decision on a finding that Hyde was able to perform his past relevant work as well as a significant number of other jobs.

In January 2006, Hyde filed a complaint against Defendant Michael Astrue,[2] the Commissioner of Social Security (hereinafter "Commissioner"), seeking judicial review of the ALJ's decision to deny him social security benefits. In January 2007, Hyde filed a Motion for Summary Judgement [(sic)] (#18). In February 2007, the Commissioner filed a Motion for an Order Which Affirms the Commissioner's Decision (#19). After reviewing the administrative record and the parties' memoranda, this Court recommends, pursuant to its authority under U.S.C. § 636(b)(1)(B) that Plaintiff's Motion for Summary Judgement **(#18)** be **DENIED**.

---

[1]Pursuant to FED. R. APP. P. 43(c), we have substituted Michael J. Astrue for Jo Anne B. Barnhart as the named defendant-appellee.

[2] Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Michael Astrue was substituted for Jo Anne Barnhart as the defendant in this suit.

## I.  Background
### A.  Procedural Background

Hyde filed his applications for DIB and SSI in February 2003, claiming that he had become unable to work on August 15, 2000, because of a degenerative disc disease, sclerosis, hypertrophy, and spondylolisthesis.  The Social Security Administration (hereinafter "SSA") denied Hyde's application originally in April 2003 and on reconsideration in July 2003.  In September 2003, Hyde requested a hearing by an administrative law judge, which ALJ Welsch held in August 2005.  The ALJ issued a decision in September 2005 denying Hyde benefits based on a finding that he was capable of performing his past relevant work as well as a significant number of other jobs.  In December 2005, the Appeals Council denied Hyde's request for review, making the ALJ's decision the final decision of the Commissioner.  Hyde commenced the current action for review of the ALJ's decision in January 2006 pursuant to 42 U.S.C. § 405(g).

### B.  Plaintiff Hyde's Medical Background

Plaintiff Hyde was forty years old at his alleged onset date of August 2000 and forty-five on the date of the ALJ's decision (R. 16).  Hyde had earned a GED and completed two years of technical school.  He previously worked as an inspector, delivery person, truck driver, electronics technician, hand packager, wirer, and kitchen helper.  *Id*.

In January 2001, Hyde's examining physician, Dr. Sreeman Prathipati, noted tenderness and muscle spasm in Hyde's lumbar area (R. 16).  Additionally, x-rays of Hyde's lumbar spine showed L5-S1 degenerative disc disease and osteophyte formation.  *Id.*  A CT scan of the lumbar region also revealed degenerative changes at L5-S1 with diffuse bulging and mild spondylolisthesis and spondylosis.  *Id.*  A February 2001 body bone scan also revealed findings consistent with mild degenerative changes at L5-S1.  *Id.*

Further treatment in March 2001 revealed normal straight leg raising and good strength in the extremities (R. 17).  Examinations in September 2001 revealed similar findings with decreased deep tendon reflexes in the lower extremities.  *Id*.

In January 2003, a CT scan of the lumbar spine revealed bilateral pars defects with significant degenerative disc disease throughout (R. 19).

In March 2003, an examination revealed mild tenderness in the lumbosacral region, but almost full spinal motion. *Id*. The examination also showed normal straight leg raising, no sensory or motor deficits, and normal reflexes (R. 20). A CT scan showed a disc bulge with impression on the thecal sac at L3-4 and L4-5, bilateral pars defects with significant degenerative disc disease throughout the lumbar spine, and facet hyperthropy at L5-S1. *Id*.

In March 2003, Dr. H. Atluri examined Hyde and found that Hyde had trouble lying on his back and had severe difficulties walking on his toes and heels, squatting and arising, and hopping on one leg. *Id*. Hyde also had moderate difficulty with tandem walking and getting on and off the examination table (R. 20-21). In addition, motion of the lower extremities was normal except for straight leg raising (R. 20). Back flexion was limited to sixty degrees while extension and lateral flexion were limited to ten degrees. *Id*.

On April 1, 2003, and May 30, 2003, state agency physicians reviewed Hyde's medical record to assess his ability to work. The physicians concluded that Hyde was able to lift or carry up to twenty pounds occasionally, lift or carry ten pounds frequently, stand or walk for six hours per day, and sit for six hours per day. Doctors also found that Hyde could not climb ladders, ropes, or scaffolds, and could occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl (R. 32).

In October 2003, Dr. L. Dunkelberger completed a form for an Illinois Disabled Person Identification card in which he stated that Hyde had a permanent condition consisting of degenerative disc disease, peripheral neuropathy, and chronic low back pain which severely limited his ability to walk (R. 22).

### C.  The Hearing Before the ALJ

The ALJ held a hearing in August 2005 at which Hyde, witness Bart Tirpak, and vocational expert Jennie Chin (hereinafter "VE") testified.

Hyde testified that he stopped working full time after his alleged onset date of August 15, 2000.  He further testified that since his alleged onset date he performed odd jobs, worked on the computer, helped his friend remodel a house, and did a little grocery shopping.  Also, Hyde went on a fishing trip to Missouri in the spring of 2005, went out to eat, went to southern Illinois to visit family, and drove.

When the ALJ questioned him about his back problems, Hyde indicated that he experienced pain varying from a three to a nine (on a scale of one to ten with ten being the most severe), that he is unable to stand on concrete for more than five to ten minutes, and that he uses a cane even though it does not provide much help.

The ALJ called the VE to testify and asked her if a person of the same age as Hyde, with the same education, experience, and physical limitations, would be able to perform his past work (R. 69).  The ALJ described Hyde as able to perform light and sedentary work and unable to perform any jobs that would require more than occasional bending or stooping, acute hearing, or climbing or working at unprotected heights.  The VE testified that Hyde could perform his past work as a wirer and a general inspector.  In addition, the VE indicated that, within Illinois, Hyde could perform 18,439 light production worker positions, 2,950 sedentary production worker positions, 3,006 light stock labor positions, 2,004 sedentary stock labor positions, 13,365 light packaging positions, 818 sedentary packaging positions, 7,639 light office clerk positions, and 2,778 sedentary office clerk positions.

The ALJ asked the VE whether her testimony was consistent with data published in the Dictionary of Occupational Titles and the VE confirmed that it was (R. 70).  On further questioning, the VE indicated that even a sedentary job could potentially require up to two hours of intermittent standing or walking.

The ALJ then called Tirpak to testify.  Tirpak testified that Hyde's involvement in both the fishing trips and remodeling work was limited to nonphysical activity.

### D.  The ALJ's Decision

A claimant is disabled within the meaning of the Social Security Act if she satisfies the five-step inquiry set forth in 20 C.F.R. § 416.920(a)(4).  According to the five-step inquiry, the ALJ must consider (1) the claimant's current work activity, if any; (2) the severity of the claimant's impairment; (3) whether the claimant's impairment meets or exceeds one of a list of specific impairments; (4) whether the claimant can still perform her past relevant work; and (5) whether the claimant is able to perform any other work within the economy.

The ALJ found that Hyde had not engaged in substantial gainful activity since the alleged onset of his disability.  She found that Hyde had impairments that are "severe" under the Social Security Act and Regulations, but that these impairments did not meet or medically equal one of the listed impairments in Regulation No. 4, Subpart P, Appendix 1.

The ALJ found that Hyde's allegations regarding the degree of his limitations were not credible.  She also found that he retained the residual functional capacity (hereinafter "RFC") to perform light work that requires no climbing or work at unprotected heights, only occasional bending and stooping, and no work that requires acute hearing.  Further, she found that Hyde was able to perform his past relevant work as an inspector and wirer, and that he was able to perform a significant number of jobs in the national economy.  Thus, the ALJ concluded that Hyde was not disabled.

### II.  Standard of Review

Section 205(g) of the Social Security Act (42 U.S.C. § 405(g)) authorizes judicial review of the Commissioner's final decision.  When, as here, the Appeals Council denies review, the ALJ's decision stands as the final decision of the Commissioner.  20 C.F.R. §§ 404.981, 416.1481.  The Act specifies that "the findings of the Comissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive."  42 U.S.C. § 405(g).  Substantial

evidence is more than a "mere scintilla" of evidence but can be less than a preponderance; it is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (*quoting Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). The ALJ has the duty to weigh the evidence, resolve material conflicts, make independent findings of fact, and determine the case accordingly. *Id.* at 399-400. Judicial review is limited to determining whether substantial evidence supports the ALJ's findings and whether the ALJ applied the correct legal standards in reaching her decision. 42 U.S.C. § 405(g). A reviewing court may not decide the facts anew, reweigh the evidence, or substitute its own judgment for that of the Commissioner. *Perkins v. Chater*, 107 F.3d 1290, 1296 (7th Cir. 1997).

### III. Discussion

Hyde argues that the Court should reverse the ALJ's decision because it was not based on substantial evidence. Specifically, Hyde contends that the ALJ's RFC finding was not supported by substantial evidence and that the ALJ wrongly disregarded Hyde's claims that he could not stand or stay in one position for more than five to ten minutes.

Hyde first argues that substantial evidence fails to support the ALJ's RFC finding because the ALJ relied too heavily on the state agency physicians' reports dated April 1, 2003, and May 30, 2003. Hyde contends that the weight the ALJ gave to the state agency doctors' RFC finding was improper because the doctors did not examine Hyde and did not have any medical records dated after June 30, 2003.

The record includes the following information. CT scans and a bone scan revealed degenerative disc disease with spondylosis and spondylolisthesis (R. 16). However, clinical findings also revealed normal straight leg raising and good strength in the extremities (R. 17). Subsequent examinations also showed normal straight leg raising, no sensory or motor deficits, and normal reflexes (R. 20). One examination revealed severe difficulties walking on toes and heels, squatting and arising, and hopping on one leg, moderate difficulty with tandem walking and getting on and off the examination table, and normal motion of the lower

extremities (R. 20-21).  Furthermore, the Court notes that the ALJ accurately characterized Dr. Dunkelberger's notes as containing no objective evidence to support a severe limitation on Hyde's ability to walk (R. 31).  No other significant medical examinations occurred past June 30, 2003.  Thus, the medical record does not support a finding that Hyde cannot stand for more than five to ten minutes.

The only evidence Hyde presented to support his contention that he could stand for only five to ten minutes was his own testimony.  The ALJ determined that this testimony was not credible because Hyde demonstrated an ability to work and had a propensity for exaggerating the extent of his limitations (R. 32).  Specifically, Hyde repeatedly told doctors that he worked as a construction worker after his alleged onset date of August 15, 2000 (R. 16-17, 19).  In addition, the ALJ noted that Hyde repeatedly stated that his back condition required surgery even though he was advised that he was not a surgical candidate (R. 32).  Further, Hyde spoke to his psychologist about his fear of becoming paralyzed despite the fact that no treating physician indicated that paralysis was a possibility.  *Id*.

The ALJ's determination of credibility is owed substantial deference and the Court will not reverse that determination unless the claimant can show the decision was "patently wrong." *Powers v. Apfel*, 207 F.3d 431, 435 (7th Cir. 2000).  Under SSR 96-7p, the ALJ must provide specific reasons for her credibility determination based on evidence in the case record.  *Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001).  Thus, the Court will affirm the ALJ's credibility determination "as long as the ALJ gives specific reasons that are supported by the record for his finding." *Skarbek v. Barnhart*, 390 F.3d 500, 505 (7th Cir. 2004) (affirming the ALJ's decision when the ALJ articulated two specific reasons).

Here, the ALJ articulated her reasons for her credibility determination and the record supports those reasons.  Therefore, the Court cannot conclude that the ALJ was patently wrong when she determined that Hyde's testimony was not credible.

The findings of the ALJ are conclusive if they are supported by substantial evidence which could reasonably support the ALJ's RFC finding.  Here, the medical record does not support Hyde's claim that he can stand or walk for only five to ten minutes at a time.  Further, the ALJ's credibility determination was sufficient because it was based on evidence in the record.  Accordingly, the Court recommends denying Hyde's motion for summary judgment.

### IV.  Summary

For the reasons set forth above, this Court recommends that Plaintiff's Motion for Summary Judgement **(#18)** be **DENIED**.  The parties are advised that any objection to this recommendation must be filed in writing with the clerk within ten (10) working days after being served with a copy of this Report and Recommendation.  *See* 28 U.S.C. § 636(b)(1).  Failure to object will constitute a waiver of objection on appeal.  *Video Views, Inc. v. Studio 21*, Ltd., 797 F.2d 538, 539 (7th Cir. 1986).

ENTER this 29th day of June, 2007.

s/ DAVID G. BERNTHAL
U.S. MAGISTRATE JUDGE